## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**WILLIE FLOYD,**

      **Petitioner,**

**v.**                               **Case No.  3:15cv361-MCR/CAS**

**FLORIDA DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On August 7, 2015, Petitioner, Willie Floyd, a prisoner in the custody of the Florida Department of Corrections, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1. Respondent filed an answer on July 1, 2016, with exhibits.  ECF No. 15. Petitioner filed a reply on August 10, 2016.  ECF No. 19.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the

pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

## Background and Procedural History

Petitioner was charged in Escambia County, Florida, by a third Amended Information on July 5, 2012, with Count 1, attempted first-degree premeditated murder of Derirck Dewayne Medlock on or about December 6, 2011, with a deadly weapon, to-wit, a shotgun, in violation of sections 782.04 and 775.087, Florida Statutes, and Count 2, aggravated battery on Derirck Dewayne Medlock on or about December 6, 2011, and in committing said offense did use, carry, actually possess, and discharge the weapon, to-wit, a shotgun, in violation of sections 784.045(1)(a)(2) and 775.087, Florida Statutes.  Ex. A.I at 5.[1]

Jury trial was held on September 20, 2012, at which Petitioner was found not guilty of Count 1 and guilty as charged of Count 2.  Ex. A.I at 44-46.  The jury found that Petitioner actually possessed a firearm and discharged it during the commission of the offense.  Ex. A.I at 44.  On November 8, 2012, Petitioner was adjudicated guilty and sentenced pursuant to section 775.087(2), Florida Statutes, to a minimum mandatory

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through Q submitted in conjunction with Respondent's answer, ECF No. 15.

term of twenty years in prison, plus fines and fees, with credit for time served of 75 days.  Ex. A.I at 53-54, 67-74.

Appeal was taken to the state First District Court of Appeal on November 14, 2012, Ex. A.I at 75, where Petitioner raised two issues on appeal: (1) error in having Judge Allen preside at trial when not assigned by the Chief Judge, and error in allowing Judge Shackelford to substitute for Judge Allen to deal with a jury question, and (2) error in Judge Shackelford's instructing the jury with Florida Standard Jury Instruction (Crim.) 4.1 Jury Deadlock.  Ex. B.  The state appellate court affirmed per curiam without written opinion on September 24, 2013, Ex. D, and the mandate was issued on October 10, 2013.  Ex. E.  *See* Floyd v. State, 121 So. 3d 1040 (Fla. 1st DCA 2013) (table).

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on January 31, 2014, raising sixteen grounds of ineffective assistance of trial counsel.  Ex. F at 1-37.  The trial court entered an order striking the motion as insufficiently pled, but with leave to amend.  Ex. F at 38-39.  Petitioner filed an amended motion alleging 14 claims of ineffective assistance of trial counsel (IAC) on July 30,

2014.[2]  Ex. F.  The court summarily denied the amended motion on

December 8, 2014, Ex. F at 69-139, and rehearing or clarification was

denied.  Ex. F at 140-145.  Petitioner appealed the denial of post-conviction

relief on February 6, 2014, Ex. F at 146, and the state appellate court

affirmed per curiam without written opinion on April 22, 2015.  Ex. I.  The

mandate was issued on May 19, 2015.  Ex. J.  *See* Floyd v. State, 162 So.

3d 988 (Fla. 1st DCA 2015) (table).

On September 22, 2014, Petitioner filed a petition for writ of habeas

corpus in the state First District Court of Appeal raising two grounds of

ineffective assistance of appellate counsel.  Ex. K.  Petitioner alleged that

appellate counsel should have argued (1) fundamental error based on an

erroneous application of the "initial aggressor" instruction and (2)

---

[2] The claims raised in Petitioner's amended Rule 3.850 motion were: (1) IAC in failing to object to the "initial aggressor" instruction based on lack of evidence; (2) IAC in failing to object that the justifiable use of force instruction deprived Petitioner of the "stand your ground" defense; (3) IAC in failing to move to dismiss based on statutory immunity; (4) IAC in failing to object to improper admission of deposition testimony; (5) IAC in failing to invoke the rule of completeness and object to admission of a portion of a witness deposition; (6) IAC in failing to object to the State using impeachment as substantive evidence; (7) IAC in failing to develop available facts supporting the defense; (8) IAC in failing to prepare and call defense witnesses; (9) IAC in failing to challenge or strike a juror; (10) IAC in failing to investigate the mental state of defense witness Dubose to assist in proper direct examination; (11) IAC in failing to request the lesser included offense of aggravated assault and failing to advise Petitioner of the jury's pardon power; (12) IAC in asking Petitioner if he had any prior felony convictions and failing to ask for a curative instruction when the court would not allow the answer; (13) IAC in failing to object to a stand-in judge giving an unnecessary "Allen charge"; and (14) cumulative error.  Ex. F at 41-68.

fundamental error based on the erroneous giving of the "initial aggressor"

instruction.  Ex. K at 6-14.  The state district court of appeal denied the

petition on April 28, 2015.  Ex. N.  Petitioner's motion for a written opinion,

Ex. O, was denied on June 12, 2015.  Ex. P.  *See* Floyd v. State, 166 So.

3d 770 (Fla. 1st DCA 2015) (table).

Petitioner filed this petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254 in this Court on August 7, 2015, raising the following nine

grounds for relief:

> (1) A. Petitioner was denied effective assistance of counsel by trial counsel's failure to object to the erroneous, out-of-order recitation of the initial aggressor instruction arising from section 776.041(2), Florida Statutes, where the instruction, as given, deprived Petitioner of the "stand your ground" defense and shifted the burden of proof; and B. appellate counsel rendered ineffective assistance in failing to raise the erroneous recitation of the instruction as fundamental error on direct appeal.  ECF No. 1 at 3.

> (2)  A. Trial counsel rendered ineffective assistance by failing to object to the giving of the initial aggressor instruction without evidence to support the instruction; and B. appellate counsel rendered ineffective assistance by failing to raise this issue as fundamental error on direct appeal.  ECF No. 1 at 7.

> (3)  Trial counsel rendered ineffective assistance by failing to move to dismiss the charges based on the immunity provided by section 776.032(1), Florida Statutes.  ECF No. 1 at 9.

> (4)  Trial counsel rendered ineffective assistance by failing to object to the improper introduction of deposition testimony.  ECF No. 1 at 10.

(5)  Trial counsel rendered ineffective assistance by failing to develop facts to support the defense theory where the facts were readily available and discernible from the photographs introduced by the State.  ECF No. 1 at 13.

(6)  Trial counsel rendered ineffective assistance by failing to prepare and call witnesses to support the defense theory.  ECF No. 1 at 15.

(7)  Trial counsel rendered ineffective assistance by failing to strike a biased juror who was not rehabilitated.  ECF No. 1 at 16.

(8)  Trial counsel rendered ineffective assistance by failing to object when a stand-in judge, who was unfamiliar with the case, gave an unnecessary and prejudicial "Allen charge." ECF No. 1 at 18.

(9)  Trial counsel rendered ineffective assistance and Petitioner did not receive a fair trial when all counsel's failings are considered cumulatively.  ECF No. at 21.

In his reply, Petitioner has conceded as to Grounds 6, 7, and 8 that he cannot overcome the doubly deferential standard applicable to the claims. ECF No. 19 at 22.  The court accepts Petitioner's concessions, which are tantamount to withdrawal of the claims, and will therefore address only claims 1 through 5 and 9.[3]

---

[3] *See* Bailey v. Tucker, No. 5:09cv221-RS/EMT, 2011 WL 5980989, at *14 (N.D. Fla. Oct. 12, 2011) (Report and Recommendation to deny § 2254 petition accepting Petitioner's concession as to one ground and declining to conduct further review on that claim), approved by 2011 WL 5981035 (N.D. Fla. Nov. 30, 2011) (Order approving and incorporating report and recommendation and denying certificate of appealability); Evans v. McNeil, No. 3:07cv98-LAC/EMT, 2009 WL 3163214, at *17 (N.D. Fla. Sept. 30, 2009) (Report and Recommendation to deny § 2254 petition explaining as to one

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody only under certain

specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim—
>
> > (1) resulted in a decision that was contrary to, or involved
> > an unreasonable application of, clearly established
> > Federal law, as determined by the Supreme Court of the
> > United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the
> > evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also* <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181

(2011); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently

---

ground that Petitioner's reply indicates he expressly wishes to withdraw the ground and
determining the court need not consider the issue), <u>adopted by</u> 2009 WL 3710725 (N.D.
Fla. Nov. 3, 2009) (order).

than this Court has on a set of materially indistinguishable facts." <u>Williams</u>

<u>v. Taylor</u>, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring).  "Under

the 'unreasonable application' clause, a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from this

Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case."  *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief

does not mean the state court's contrary conclusion was unreasonable."

<u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011).  The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a
> complete bar on federal-court relitigation of claims already
> rejected in state proceedings. . . .  It preserves authority to
> issue the writ in cases where there is no possibility fairminded
> jurists could disagree that the state court's decision conflicts
> with this Court's precedents.  It goes no further.  Section
> 2254(d) reflects the view that habeas corpus is a "guard against
> extreme malfunctions in the state criminal justice systems," not
> a substitute for ordinary error correction through appeal.
> <u>Jackson v. Virginia</u>, 443 U.S. 307, 332, n.5 (1979) (Stevens, J.,
> concurring in judgment).  As a condition for obtaining habeas
> corpus from a federal court, a state prisoner must show that the
> state court's ruling on the claim being presented in federal court
> was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted).  The federal court employs a " 'highly

deferential standard for evaluating state-court rulings, which demands that

state-court decisions be given the benefit of the doubt.' " Pinholster, 563

U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

 "Before a federal court may grant habeas relief to a state prisoner,

the prisoner must exhaust his remedies in state court." O'Sullivan v.

Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner

must have apprised the state court of the federal constitutional claim, not

just the underlying facts of the claim or a "somewhat similar state-law

claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting

Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be

exhausted, "the petitioner must have given the state courts a 'meaningful

opportunity' to address his federal claim." Preston v. Sec'y, Fla. Dep't of

Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416

F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly present" his claim

in each appropriate state court in order to alert the state courts to the

federal nature of the claim.  Duncan v. Henry, 513 U.S. 364, 365 (1995);

Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan v. Boerckel, 526

U.S. 838, 845 (1999).  The State must have been provided the

" 'opportunity to pass upon and correct' alleged violations of its prisoners'

federal rights." Henry, 513 U.S. at 365) (quoting Picard, 404 U.S. at 275

(citation omitted)).

"This rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan, 526 U.S. at 845; *see also* Picard, 404 U.S. at 275 ("If the exhaustion doctrine is to prevent 'unnecessary conflict between courts equally bound to guard and protect rights secure by the Constitution,' it is not sufficient merely that the federal habeas applicant has been through the state courts." (citation omitted)).  In regard to claims of ineffectiveness of trial counsel, the Petitioner must have presented those claims in state court " 'such that a reasonable reader would understand each claim's particular legal basis and factual foundation.' " Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007) (citing McNair, 416 F.3d at 1302).

In order to obtain review where a claim is unexhausted and, thus, procedurally defaulted, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993).  In order to demonstrate cause, Petitioner must show that an "external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."

Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)); *see also* McCleskey v. Zant, 499 U.S. 467, 497 (1991) (emphasizing that the external impediment must have prevented the petitioner from raising the claim).  A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).  In order to satisfy the miscarriage of justice exception, the Petitioner must show that a constitutional violation has occurred that "probably resulted in a conviction of one who is actually innocent"—that it is more likely than not that no reasonable juror would have convicted him—which is a stronger showing than is necessary to establish prejudice.  *See* Schlup v. Delo, 513 U.S. 298, 327 (1995).  This standard "thus ensures that petitioner's case is truly 'extraordinary.' " *Id.* (citing McCleskey, 499 U.S. at 494).  Such a case is "extremely rare." Schlup, 513 U.S. at 324.

    This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not

fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).  However, "it is

not the province of a federal habeas court to reexamine state-court

determinations on state-law questions" and "[i]n conducting habeas review,

a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502

U.S. 62, 67-68 (1991).  *See also* Swarthout v. Cooke, 562 U.S. 216, 222

(2011) ("[W]e have long recognized that 'a "mere error of state law" is not a

denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21

(1982))).

For claims of ineffective assistance of counsel, the United States

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

deficient performance, a "defendant must show that counsel's performance

fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is

"strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."

Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690).  Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Id.* at 13.  The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct. *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Mirzayance, 556 U.S. at 123. It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*  Because both deficiency

and prejudice must be shown to demonstrate a violation of the Sixth

Amendment, the court need not address both prongs if the petitioner fails to

prove one of the prongs.  <u>Strickland</u>, 466 U.S. at 697.

## **Ground 1: Recitation of the "Initial Aggressor" Instruction**

Petitioner contends that he was denied effective assistance of trial

counsel, in contravention of the Sixth and Fourteenth Amendments, by

counsel's failure to object to the alleged out-of-order recitation of the initial

aggressor jury instruction pursuant to section 776.041(2), Florida Statutes.

He argues that the instruction, as given, deprived him of the "stand your

ground" defense and shifted the burden of proof.  He also contends that

appellate counsel rendered ineffective assistance by failing to raise as

fundamental error on direct appeal the recitation of the initial aggressor

instruction.  ECF No. 1 at 3.

Petitioner argues that his defense at trial was self-defense under

Florida's "stand your ground" law.  He contends that the "justifiable use of

force" instruction negated his "stand your ground" defense when given in

the sequence in which the portions of the instruction were given.  The court

instructed the jury in pertinent part as follows:

> An issue in this case is whether the defendant acted in
> self-defense.  It is a defense to the offenses with which Willie
> James Floyd is charged if the injury to Derirck Dwayne Medlock
> resulted from the justifiable use of deadly force.  Deadly force

means force likely to cause death or great bodily harm. A person is justified in using deadly force if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another; or the imminent commission of Aggravated Battery or Aggravated Assault against himself or another.

. . . . [instruction on elements of Aggravated Assault and definition of Deadly Weapon]. However, the use of deadly force is not justifiable if you find Willie James Floyd initially provoked the use of force against himself unless [A,] the force asserted towards the defendant was so great that he reasonably believed that he was in imminent danger of great bodily harm and had exhausted every reasonable means to escape the danger other than using deadly force on Derirck Dwayne Medlock; B, in good faith, the defendant withdrew from physical contact with Derirck Dwayne Medlock and clearly wanted to withdraw and stop the use of deadly force but Derirck Dwayne Medlock continued or resumed the force.

In deciding whether the defendant was justified in the use of deadly force, you must judge him by the circumstances by which he was surrounded at the time the force was used. The danger facing the defendant need not have been actual; however, to justify the use of deadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force. Based upon appearances, the defendant must have actually believed the danger was real. If the defendant was not engaged in any unlawful activity and was attacked in any (inaudible)[4] had the right to be, he had no duty to retreat and had the right to stand his ground and meet force with force including deadly force if he reasonably believed that it was necessarily [sic] to do so to prevent the commission of a forcible felony.

In considering the issue of self-defense, you may take into account the relative physical abilities and capacities of the

---

[4] The standard instruction states here: "place where he." Fla. Std. Jury Inst. (Crim.) 3.6(f) Justifiable Use of Deadly Force.

defendant and Derirck Medlock.  If in your consideration of the
issue of self-defense you have a reasonable doubt of the
question of whether the defendant was justified in the use of
deadly force, you should find the defendant not guilty.
However, if from all the evidence you are convinced that the
defendant was not justified in the use of deadly force, you
should find him guilty if all the elements of the charge have
been proved.

Ex. A.III at 260-62 (transcript pagination).  This instruction substantially

tracked Florida Standard Jury Instruction (Crim.) 3.6(f), Justifiable Use of

Deadly Force, as it existed at the time of trial.  *See* In re Standard Jury

Instructions in Criminal Cases—Report No. 2009-1, 27 So. 3d 640, 642-44

(Fla. 2010).

## A. Claim of IAC of Trial Counsel

Petitioner first contends that trial counsel rendered ineffective

assistance by failing to object to this instruction because, he argues, the

order in which the justifiable use of deadly force portion of the instruction

and the stand your ground portion of the instruction was given rendered the

instruction confusing and tended to negate his right to stand his ground.

Respondent contends that the claim is not cognizable in this federal

habeas proceeding because it was not presented as a federal claim in the

state court, even though Petitioner contended he was denied effective

assistance of counsel.  ECF No. 15 at 16.  The claim raised in the state

post-conviction court was that trial counsel should have objected to the giving of the "justifiable use of force" instruction because it negated the "stand your ground" instruction.  Although Petitioner did not cite Strickland or refer to the Sixth Amendment of the United States Constitution in this state court claim, he did discuss the claim in terms of deficiency and prejudice.  Ex. F at 45-46.  He also contended in his cumulative error claim in state court that counsel's deficient performance in all the claims raised in the amended Rule 3.850 motion denied him his right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States constitution.  Ex. F at 67.

The post-conviction court analyzed all the claims in Petitioner's amended Rule 3.850 motion, including this one, expressly in terms of Strickland and the standards set forth there.  *See* Ex. F at 69, 70-72. Because the post-conviction court understood and decided the claim based on the requirements of the Sixth Amendment right to counsel, the state court did have the required " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  Henry, 513 U.S. at 365) (quoting Picard, 404 U.S. at 275 (citation omitted)).

However, in his claim of ineffective assistance of trial counsel made in the state post-conviction court, Petitioner did not base the claim on the

order in which the portions of the instruction were given—but cited only the fact that both portions were given.  Ex. F at 44-45.  To the extent that his claim in this court is premised on the order in which the various portions of the standard instruction were recited, rather than on the substance instruction itself, the claim is unexhausted.  Regardless of any procedural default, the claim should be denied on the merits.

Whether the jury was properly instructed—thereby negating trial counsel's obligation to object—is a state law issue.  Under Florida law, a trial court has wide discretion regarding the instructions to be given the jury.  *See, e.g.*, Kearse v. State, 662 So. 2d 677, 686 (Fla. 1995).  The initial determination of the applicable substantive law in each case should be made by the trial judge and the judge is charged with correctly instructing the jury in each case.  In the Matter of Use by Trial Courts of Standard Jury Instructions in Criminal Cases, 431 So. 2d 594, 598 (Fla. 1981).  Florida's standard jury instructions are presumed correct and are preferred over special instructions.  Gutierrez v. State, 177 So. 3d 226, 230 (Fla. 2015).  Florida courts are generally required to adhere to the standard jury instructions unless the judge determines the instruction does not accurately and adequately state the relevant law.  Moody v. State, 359 So. 2d 557, 560 (Fla. 4th DCA 1978).

The state court determined that counsel was not deficient in objecting

to the instruction, stating in pertinent part:

> The duty to escape only applies if Defendant was the initial
> aggressor.  Where there was a dispute as to who was the initial
> aggressor, this instruction has been held to be proper.
> [citations omitted].  Defendant could still claim his stand your
> ground defense with no duty to retreat if the jury did not find him
> to be the one who initially provoked force, as provided by
> section 776.041(2).[5]  Therefore, counsel was not ineffective
> for failing to object to the instruction. . . .  Based on the totality
> of the evidence, there is no reasonable probability Defendant
> would have been acquitted of aggravated battery had counsel
> objected to the instruction.

Ex. F at 73-74.  The state appellate court affirmed denial of relief on

this claim.  Ex. I.

The standard jury instruction on justifiable use of force and the right

of a defendant to stand his ground, as it existed at the time of Petitioner's

trial and as recited to the jury in this case, has been held to correctly state

Florida law.  In <u>State v. [Robert] Floyd</u>, 186 So. 3d 1013, 1022 (Fla. 2016),

the court quashed a First District Court of Appeal decision that held to the

---

[5] Section 776.041 Florida Statutes (2012), provided that the justifications for the use of
deadly force in the preceding sections of the chapter—including use of force in self-
defense or in defense of others and the "stand your ground" immunity—are unavailable
to a person who initially provokes the use of force against himself unless such force is
so great the person reasonably believes that he is in imminent danger of death or great
bodily harm and that the person has exhausted every reasonable means to escape
such danger or, in good faith, the person withdraws from physical contact but the
assailant continues to use force.  § 776.041(2), Fla. Stat.

contrary,[6] and held instead that Florida Standard Jury Instruction (Crim.)

3.6(f) "accurately and correctly explains this law to the jury with regard to

the factually complex situations where the jury must unwind the facts to

determine who is the initial aggressor." *Id.* at 1020.  The Florida Supreme

Court recognized that the area of law concerning justifiable use of force

and the right to stand your ground are complex, and there is no one

required way in which the jury must be instructed, so long as the jurors are

given the necessary principles of law with which to make their findings.

The Florida Supreme Court explained in <u>State v. [Robert] Floyd</u>:

> [T]he justifiable use of force is recognized as a somewhat
> complex area of law that will necessarily yield complex jury
> instructions.  Considering a defendant's invocation of the
> "Stand Your Ground" law alone, a jury must make at least four
> factual findings.  The jury must determine (1) whether the
> defendant was not engaged in unlawful activity; (2) whether he
> was attacked; (3) whether he was somewhere he had a right to
> be; and (4) whether he reasonably believed it was necessary to
> use force.
>     The question of the applicability of the initial aggressor
> exception adds even more factual variables to the justifiable
> use of force equation.  With regard to the initial aggressor
> exception, the jury must determine whether the defendant
> initially provoked the use of force against himself.  If the jury

---

[6] <u>Floyd v. State</u>, 151 So. 3d 452 (Fla. 1st DCA 2014), was quashed by the Florida
Supreme Court in <u>State v. [Robert] Floyd</u>.  The First District had held that where the
defendant's sole defense at trial was self-defense, the standard instruction on justifiable
use of deadly force was fundamental error because it provided conflicting instructions
because the "stand your ground" portion of the instruction stated that the defendant had
no duty to retreat if he was not engaged in unlawful activity but another portion of the
instruction stated that if the defendant was the initial aggressor, the defendant could use
deadly force only if he first exhausted every means of escape.  151 So. 3d at 454.

finds that he did, then it must determine: (1) whether he reasonably believed that the provoked force threatened him with danger of death or great bodily harm; (2) whether he reasonably believed that the threatened danger was imminent; and (3) whether he exhausted every reasonable means to escape before using force to defend himself against the provoked force. Unfortunately, the decision process does not end there. In addition to retreating, an initial aggressor defendant may alternatively use justifiable force if he withdrew in good faith. This alternate basis requires the jury to determine: (1) whether he withdrew; (2) whether he communicated his desire to withdraw; (3) whether he did so in good faith; and (4) whether the other person continued to use force. Thus, when a defendant invokes his right to stand his ground and there are questions concerning who was the initial aggressor, the jury may be instructed to make at least twelve related but independent factual findings.

As a result of these many questions of fact, there may certainly be many correct ways to instruct the jury with regard to organization, terminology, and emphasis. The most important consideration, however, is that the instructions correctly guide the jury, which these do.

*Id.* at 1022. The Florida Supreme Court explained that the instruction followed the statutory requirements and that the "every reasonable means to escape" language "only applies if the jury finds the defendant to be the initial aggressor." *Id.* at 1021. In sum, the court held that "the instructions at issue correctly stated the law. The instructions are not confusing, misleading, or contradictory with regard to the duty to retreat where there is a question of fact as to who was the initial aggressor." *Id.* at 1023.

The jury instruction given in the [Robert] Floyd case followed the standard jury instruction and recited the "stand your ground" portion of the

instruction in the same order as did the instruction given in Petitioner's

case.  *See id.* at 1015-16.  The Florida Supreme Court expressed no

concern that giving the instruction in that order was confusing or shifted the

burden of proof.  Instead, the court rejected the claim in [Robert] Floyd that

the jury instructions were "confusing due to their organization."  *Id.*  The

court held that "where there is sufficient evidence to justify the presentation

of an initial aggressor instruction, a reversal of a conviction utilizing a

correct and accurate jury instruction would undermine justice."  *Id.*  The

court found the case was not one "where the jury instructions shift the jury's

attention from the issue at hand to a non-issue."  *Id.*

Because the jury instruction given in Petitioner's case was an

accurate statement of Florida law and did not shift the jury's attention away

from the issues to be decided, Petitioner has not demonstrated that trial

counsel was deficient in failing to object to the giving of the instruction in its

entirety or to the organization of the instruction.  Thus, Petitioner has failed

to demonstrate that the state court's adjudication of this aspect of Ground 1

was contrary to or an unreasonable application of Strickland, or any other

clearly established federal law as determined by the United States

Supreme Court.[7]  Habeas relief on this aspect of Ground 1 should be denied.

## B. Claim of IAC of Appellate Counsel

After his Rule 3.850 motion was denied, Petitioner filed a petition for writ of habeas corpus in the state First District Court of Appeal alleging ineffective assistance of appellate counsel and contending that appellate counsel should have argued (1) fundamental error in the erroneous application of the initial aggressor instruction because it negated his defense of self-defense; and (2) fundamental error in the erroneous giving of the initial aggressor instruction when the facts did not support it.  Ex. K at 6-14.  The state district court of appeal denied the petition.  Ex. N.  *See* Floyd v. State, 166 So. 3d 770 (Fla. 1st DCA 2015) (table).

The Respondent contends that the claim is unexhausted because in his petition for writ of habeas corpus in the state appellate court, Petitioner failed to raise any federal claim, relying on state law only, to contend counsel should have raised a fundamental error claim in regard to the

---

[7] In his Ground 2 in this proceeding, Petitioner raises a separate claim that trial counsel should have objected to the jury instruction on the basis that there was insufficient evidence to support the initial aggressor instruction.  That challenge, and whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding as addressed in 28 U.S.C. § 2254(d)(2), will be discussed in Ground 2, *infra.*  Thus, the evidence presented at trial will be discussed in Ground 2.

justifiable use of force jury instruction.  Respondent is correct that no federal claim was raised in the state court on this issue.  As noted earlier, in order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim." Preston, 785 F.3d at 457 (quoting McNair, 416 F.3d at 1302).  Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim.  Henry, 513 U.S. at 365; *see also* Picard, 404 U.S. at 275; O'Sullivan, 526 U.S. at 845.

Regardless of any procedural default, this aspect of Ground 1 should be denied on the merits.  As discussed above, the instruction on justifiable use of force, as given in both substance and organization, was not erroneous.  Thus, appellate counsel was not deficient for failing to raise the issue of fundamental error in regard to the instruction.  Moreover, the state court in Brown v. State, 194 So. 3d 507, 508 (Fla. 4th DCA 2016), rejected a claim of fundamental error that the instruction explaining the defendant's right to "stand your ground" was vitiated by the jury instruction on duty to retreat.  The court stated, "Because the unobjected-to jury instructions accurately communicated the law to the jury and did not constitute fundamental error, we affirm Brown's judgment and sentence."  *Id.*

Under Florida law, fundamental error occurs where the error reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error. *See* F. B. v. State, 852 So. 2d 226, 229-31 (Fla. 2003). This is a high burden which requires that the error must go to the foundation of the case and is equivalent to a denial of due process. Williams .v State, 209 So. 3d 543, 558 (Fla. 2017). Because the jury instruction as given properly stated Florida law and was not confusing or misleading, Petitioner cannot demonstrate that, but for the alleged error of appellate counsel, the fundamental error claim would have been successful and the result of the proceeding would have been different.

Petitioner has failed to meet his burden under § 2254 to show that the adjudication of the state court in denying his claim of ineffective assistance of appellate counsel was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.[8] Thus, he is not entitled to habeas relief on this aspect of Ground 1 should be denied.

---

[8] See note 7 *supra* as to the issue of unreasonable determination of the facts in light of the state court proceeding.

## <u>Ground 2: Evidence to Support Initial Aggressor Instruction</u>

Petitioner contends that trial counsel rendered ineffective assistance in contravention of the Sixth and Fourteenth Amendments by failing to object to the giving of the initial aggressor instruction without evidence to support the instruction; and that appellate counsel rendered ineffective assistance by failing to raise this deficiency as fundamental error on direct appeal.  ECF No. 1 at 7.  He argues that the altercation began when Petitioner asked the victim, Medlock, why he pulled a gun, to which Medlock answered, "I'll show you."  Petitioner contends that before Medlock could pull his gun, Petitioner pulled a twelve-gauge shotgun loaded with birdshot and fired it only as a warning because he believed Medlock intended to do him bodily harm.  ECF No. 1 at 7.  Petitioner argues that the facts show he fired a second shot in the ground behind Medlock as Medlock ran away because Petitioner thought Medlock was reaching for his shirt where he had a firearm.  *Id.*  Based on these alleged facts, Petitioner contends that the "initial aggressor" portion of the instruction was improper and trial counsel should have objected.  *Id.* at 7-8.

This claim of ineffective assistance of trial counsel was raised in the amended motion for post-conviction relief in the trial court, and was summarily denied.  Ex. F at 41, 70-72.  After discussing the trial testimony,

the post-conviction court concluded that the jury could have found Defendant was the initial aggressor when he fired the first shot and "[b]ecause there is evidence that would support an argument that Defendant was the initial aggressor, counsel was not ineffective for failing to have objected to the instruction." Ex. F at 72. The denial of relief on this claim was affirmed per curiam by the state First District Court of Appeal.

As the evidence will show, the post-conviction was correct that the jury could have found that Petitioner was the initial aggressor. Thus, the initial aggressor instruction was proper based on the evidence, and trial counsel was not deficient for failing to object on the grounds that the instruction was not supported by the evidence.

The victim in the case, Derirck Dwayne Medlock, testified that in December 2011, he was in the Pensacola and on December 6, 2011, he was driving up Highway 29 North heading back to Birmingham where he lived. Ex. A.II at 114. Medlock said it was raining and he was driving in the far right lane while talking on his cell phone when a car pulled out from the far left. He thought the car would stop in the median but, he testified, the car came out in front of him and almost hit him. *Id.* at 115-116. Medlock said he braked and honked his horn. He testified the driver of the other car began hitting the brakes. Medlock testified that he passed the car and

noticed that the driver, a black male, appeared irate. *Id.* at 116. After

Medlock passed the other driver, he got back in the right lane at some

point. Medlock pulled over at a gas station store to get himself together,

but kept the car running. Ex. A.II at 117-18.

Medlock testified that as he was sitting there smoking a cigarette and

talking on the cell phone, he saw a car and told the person on the phone it

looked like the car that cut him off. *Id.* at 118. Medlock said the driver got

out of his car and came to Medlock's car window and said, "I see you have

a problem with blowing the horn." *Id.* at 119. When Medlock told the

person he had no problem, the other driver said, "[o]h you have a problem."

*Id.* Medlock testified that is when the other driver, whom he later identified

as Petitioner, "upped the shotgun on me." *Id.* at 119, 125.

Medlock testified he had a concealed weapon permit and had a

handgun with him that day, but that the gun was hidden by his shirt and he

did not make reference to having a gun. *Id.* at 120. He denied making any

threat to Petitioner and said when he saw the shotgun, he tried to run

away. *Id.* at 121. When he ran across the street, he heard another shot

and felt his legs get warm. He said he knew he had been shot. *Id.* at 122.

He denied pulling his gun or firing back at Petitioner. He then saw

Petitioner and his passenger drive away.  Medlock returned to his car, drove to another location, and called the police.  *Id.*

Tiffany Brewer testified that on that day she was in a truck at the Quick Stop, where the incident occurred, while her boyfriend went inside the store.  Ex. A.II at 133-34.  She saw a white car in the lot and another car pull up.  The driver of the second car got out and began screaming at the man in the white car.  She said the man was "hollering at the other guy to get off the phone, nigger."  *Id.* at 135.  He screamed that three times at the man in the car.  The screaming man then went back to his car and got a gun.  *Id.*  She testified that "[w]henever he fired the first time, I jumped out of my vehicle and ran in the store."  *Id.*

Gloria Harris was working at the Quick Stop on December 6, 2011, and saw Petitioner, whom she knew from the area, shooting a gun.  Ex. A.II at 137-38.  Tonya Cunningham was also working at the Quick Stop that day.  She noticed the incident in the parking lot after hearing a gunshot. She recognized the shooter as Petitioner, whom she knew previously.  *Id.* at 140.  She provided to law enforcement a copy of the store's surveillance video, later admitted as State's Exhibit 2, which she said captured the incident and which she identified in court.  *Id.* at 141.

Vernon Wayne Davis testified that he was at the Quik Stop on December 6, 2011, and heard there was an incident in the parking lot.  Ex. A.II at 145.  He looked out the window and saw a man shooting, then getting into his car and leaving.  Davis said he heard three or four shots. *Id.*  Davis got into his own car and followed, trying to get a license tag number.

Escambia Sheriff's Department Investigatory Frank Way testified that he responded to the call and began to look for the suspect's vehicle and to interview witnesses from the store.  *Id.* at 147.  Investigator Way learned that Petitioner had been taken to the Sheriff's substation where Medlock made an identification of him as the shooter.  *Id.*  The prosecution played a videotape, State's Exhibit 2, for the jury, *id.* at 151, which depicted the incident in the Quik Stop parking lot that witness Gloria Harris testified about earlier.  The State rested its case and Petitioner's counsel moved for a judgment of acquittal, which was denied.  Ex. A.II at 151-52.

The defense presented Don Dubose, Petitioner's nephew, who testified he was in the car with Petitioner, who was driving, on December 6, 2011, when he pulled out into the road where a black car almost hit him. *Id.* at 162, 167.  Dubose testified that the black car pulled up next to Petitioner's car and the driver "looked like he had some kind of weapon on

him, but I couldn't really see it because I was on the passenger side." *Id.* at

163.  He said, "[i]t looked like he had a gun pulling it out." *Id.*  Dubose said

the other driver's "hands was like on the steering wheel, but he looked like

he was coming from under the seat with something black.  That's the only

thing I could see." *Id.* at 164.  Dubose said the driver "was talking junk,

talking about follow him places and stuff." *Id.*  Dubose admitted he never

actually heard what the other driver said.  *Id.* at 165.  Dubose said the other

driver did point a pistol at Petitioner and then put it away, and told

Petitioner to follow him to the store.  *Id.*  He said they went to the store, and

Dubose went inside where he did not see or hear anything.  *Id.* at 166.  He

did not leave with Petitioner, but walked to his grandmother's house.

Dubose was impeached with his pretrial deposition testimony in which he

said he did not see any weapon when the two cars were side by side on

the highway.  Ex. A.III at 224.

Petitioner testified in his own defense that on the day of the incident

he had been squirrel hunting with his twelve gauge shotgun loaded with

birdshot.  Ex. A.II at 175.  When he went home, his mother-in-law was

there cooking and asked him to go to the store for some butter.  Petitioner

testified he took his nephew with him and went to the Piggly Wiggly for the

butter.  On the way back he decided to go buy a beer at a corner store, but

changed his mind and headed back to the intersection of Pond Street and Highway 29 in Escambia County. *Id.* at 176. He said he saw a black car fairly far away and pulled out in the median lane and then pulled over to the inside lane then the far right hand lane. *Id.* at 177. Petitioner testified that the speed limit there was 35 miles per hour. When he pulled into the outside lane, he testified, the black car was behind him, close to his bumper, blowing the car horn for about two minutes. *Id.* at 178. Petitioner denied pumping his brakes to try get the black car to rear-end him.[9]

Petitioner testified the black car came up beside Petitioner's car and rolled down the window. Petitioner rolled down his window. Petitioner said he, without indicating who, spoke to him and told him to "learn how to MF drive." *Id.* at 179. Petitioner said the person told him to follow him to the store, but when Petitioner said "FU," the person "picked up something like this and did this and put it right back down. I could tell it was a gun." *Id.* Petitioner testified that he pulled off on a side road and headed home to drop off the butter. He said he told the person with him to take the butter in because he "was fixing to go to the store to get me a beer." *Id.* He and his

---

[9] Johnny Clinton Lowery testified for the defense that he was observing the intersection of Pond and Highway 29 on the day of the incident. He said Petitioner pulled his vehicle out onto the Highway and a dark car came up behind Petitioner's car, almost hitting him, and blew the horn for about 400 yards or about ten seconds. Lowery did not see Petitioner pumping his brakes. *Id.* at 219-20.

nephew then went to the Quik Stop for the beer because it was cheaper and near his house.  When he got there, he testified, he saw the black car and decided to ask the driver why he pulled a gun on him.  He said Medlock was talking on his cell phone.  Ex. A.II at 188.  Petitioner testified Medlock first ignored him, but after asking again, Medlock said "Wait just a minute, I'm fixing to show you."  *Id.* at 181.  Petitioner could see Medlock's hands and did not see a gun.  *Id.* at 189.  When asked if he saw Medlock's gun, Petitioner testified, "No, I just know he had it because he showed it down the road."  *Id.* at 183.  Petitioner agreed he was the first one to show a gun at the store.  *Id.*

Petitioner testified that he fired a shot over the black car and the driver took off running.  Petitioner testified:

> I didn't know whether he got a gun or not.  It looked like he was reaching for his shirt.  I didn't know.  It was two shots.  I just shot off another shot.  And then after I made sure he was gone out the way, which I seen him right over behind the bushes, I didn't know that he didn't have it.  I walked back and got in my car and then I left.

*Ex.* A.II at 183-84.  Petitioner denied he was trying to hit the victim, but was just trying to scare him.  Petitioner testified that when the victim was hiding behind a bush, it was clear he did not have a gun.  *Id.* at 185.

The Florida Supreme Court has explained, "With regard to the initial aggressor exception, the jury must determine whether the defendant

initially provoked the use of force against himself.  If the jury finds that he did, then it must determine: (1) whether he reasonably believed that the provoked force threatened him with danger of death or great bodily harm; (2) whether he reasonably believed that the threatened danger was imminent; and (3) whether he exhausted every reasonable means to escape before using force to defend himself against the provoked force." [Robert] Floyd, 186 So. 3d at 1022.  The evidence supports the "initial aggressor" instruction, which tracks section 776.041(2), Florida Statutes (2012).  That provision, as noted earlier, provided that the justifications for the use of deadly force—including use of force in self-defense and the "stand your ground" immunity—are unavailable to a defendant who initially provokes the use of force against himself unless the force used against him is so great that the defendant reasonably believes he is in imminent danger of death or great bodily harm, and the defendant has exhausted every reasonable means to escape such danger or in good faith, withdraws from physical contact but the assailant continues to use force.  § 776.041(2), Fla. Stat. (2012).

Respondent alleges the claim was unexhausted by failure of Petitioner to present his claim as a federal claim in state court.  However, as discussed in Ground 1, the post-conviction court analyzed and decided

the claim in terms of the requirements of <u>Strickland</u>.  Moreover, regardless of any procedural default, this aspect of the claim should be denied on the merits.  Petitioner has not demonstrated that the adjudication of the state courts resulted in a decision that was contrary to, or an unreasonable application of, <u>Strickland</u> or any other clearly established federal law as determined by the Supreme Court.  Therefore, the requirements of § 2254(d)(1) have not been met.  Further, based on the evidence presented in the state court proceeding, Petitioner has not demonstrated that the decision was based on an unreasonable determination of the facts, as required by § 2254(d)(2).  Thus, habeas relief on this aspect of Petitioner's Ground 2 should be denied.

Petitioner also contended in this Ground 2 that appellate counsel was ineffective for failing to raise the giving of the initial aggressor instruction as fundamental error on appeal for the same reasons he contends trial counsel should have objected.  This claim of ineffective appellate counsel was raised in Petitioner's petition for writ of habeas corpus filed in the state First District Court of Appeal.  Ex. K at 11.  The appellate court denied the claim.  Ex. N.

"Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under <u>Strickland</u>."  <u>Philmore</u>

v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).  Thus, Petitioner was required to show that appellate counsel's performance fell below an objective standard of reasonableness.  Appellate counsel does not perform deficiently for failing to raise every non-frivolous ground for appeal.  *Id.* Further, Petitioner was required to show that, but for counsel's alleged error, there is a reasonable probability that the outcome would have been different.  Thus, Petitioner must show that there is a reasonable probability of success on appeal.  Heath v Jones, 941 F.2d 1126, 1132 (11th Cir. 1991).

For the reasons discussed above demonstrating that the evidence supported the "initial aggressor" instruction, Petitioner has not demonstrated that appellate counsel rendered ineffective assistance or that the state court denial of his claim of ineffective assistance of appellate counsel was unreasonable based on the state court record or contrary to any federal law as determined by the Supreme Court.  This aspect of Petitioner's Ground 2 should also be denied.

## Ground 3: Failure to Move to Dismiss Based on Immunity

Petitioner next contends that trial counsel rendered ineffective assistance by failing to move to dismiss the charges based on the immunity from prosecution provided by section 776.032(1), Florida Statutes.  ECF

Case 3:15-cv-00361-MCR-CAS   Document 20   Filed 07/07/17   Page 37 of 51

Page **37** of **51**

No. 1 at 9.  This claim was raised in Petitioner's amended Rule 3.850 motion in state court.  Ex. F at 46-47.  He contended that if a pretrial motion to dismiss based on the statutory immunity had been filed, he would have been able to prove by a preponderance of the evidence that the shooting was in self-defense.  The state post-conviction court denied the claim as insufficiently pled and because the evidence ultimately showed that a basis for immunity would not have been proven.  Ex. F at 75.  The denial of post-conviction relief was affirmed in the State First District court of Appeal.  Ex. I.

Respondent contends the claim is unexhausted and procedurally defaulted by having failed to set forth federal grounds for the claim in the state court.  However, as discussed above, the claim was analyzed and decided, in pertinent part, by the state court on the merits based on the requirements of Strickland.  Ex. F at 73, 75.  Thus, the state court did have an opportunity to determine the federal issue prior to its being brought in this habeas proceedings.  Regardless of any basis to find procedural default, the claim should be denied on the merits.

Section 776.032, Florida Statutes (2012), provided that a person who uses force as permitted in sections 776.012, 776.013, or 776.031, Florida Statutes, is immune from criminal prosecution and civil action except when

the force is used against a law enforcement officer.  Section 776.012

provides in pertinent part that a person is justified in using deadly force in

self-defense when the person reasonably believes such force is necessary

to prevent imminent death or great bodily harm.[10]  However, section

776.041(2)(a), Florida Statutes (2012), titled "Use of force by aggressor,"

provides that the justification for use of force in the preceding provisions is

not available to one who initially provokes the use of force against himself

unless the responding force is so great that the person reasonably believes

that he is in imminent danger of death or great bodily harm and the initial

aggressor has exhausted all means of escape.

Trial counsel had the legal ability to file a pretrial motion to dismiss

based on a claim of immunity from prosecution under section 776.032—the

statute grants that right.  *See* Dennis v. State, 51 So. 3d 456, 462 (Fla.

2010).  When such a motion is filed and heard prior to trial, the

responsibility to determine whether immunity has been proven lies with the

trial judge.  State v. Gallo, 76 So. 3d 407, 409 (Fla. 2d DCA 2011).  Even

assuming that trial counsel should have filed such a motion to dismiss,

subject to evidence of  the disqualifying provisions of section 776.041(2),

---

[10] Section 776.013 provides for use of force in defense while in a dwelling.  Section 776.031 provides the circumstances allowing use deadly force in defense of others.

Petitioner must show there is a reasonable probability that, but for that error of counsel, the result of the proceeding would have been different. Although the burden of proof on the defendant at a pretrial immunity hearing under section 776.032 was preponderance of the evidence, <u>Darling v. State</u>, 81 So. 3d 574, 577 (Fla. 3d DCA 2012), Petitioner cannot demonstrate under the evidence in this case that he would have been granted immunity even under that lesser burden.

As the post-conviction court found in this case, to the extent that the evidence presented at trial would have been presented at a pretrial immunity hearing, the evidence proved beyond a reasonable doubt that the shooting was not a justifiable use of deadly force in self-defense.[11]  Thus, the state court's determination that there was no reasonable probability that the result of the proceeding would have been different if a motion to dismiss had been presented pretrial is not unreasonable.  As noted earlier, "[t]he question 'is not whether a federal court believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " <u>Mirzayance</u>, 556 U.S. at 123 (quoting <u>Schriro</u>, 550 U.S. at 473).  Moreover, the <u>Strickland</u> standard is a general standard; thus, a state court has even

---

[11] *See* recitation of evidence set forth in Ground 2, *supra*.

more latitude to reasonably determine that a defendant has not satisfied that standard.  <u>Mirzayance</u>, 556 U.S. at 123.  For all these reasons, habeas relief on Ground 3 should be denied.

### Ground 4: Failure to Object to Impeachment Evidence

Petitioner contends that trial counsel rendered ineffective assistance by failing to object to the improper introduction of deposition testimony to impeach witness Dubose without also calling Dubose back to the witness stand to explain his deposition in context.  ECF No. 1 at 10.  At trial, defense witness Dubose testified that he was riding in the car with Petitioner and, when Medlock's car pulled alongside Petitioner's car, Dubose thought he saw Medlock quickly brandish a gun.  Ex. A.II at 162-64.  When the prosecutor attempted to impeach him with his pretrial deposition, Dubose testified that he remembered being deposed and remembered being asked if he saw a weapon that day.  *Id.* at 169.  He testified he did not remember how he answered the question at that time and his reading the transcript provided to him did not refresh his recollection.  *Id.* at 169-70.  When the prosecutor attempted to impeach him with his deposition transcript, the trial judge prohibited the prosecutor from publishing the text of the deposition at that time.  *Id.* at 171.  The judge told

the prosecutor that "at the next opportunity" he should present evidence of

the inconsistent statement.  *Id.*

>    During the State's rebuttal case, the prosecutor presented to the jury

a portion of Dubose's pretrial deposition testimony, as follows:

>    THE COURT: . . . .  Mr. Williams, the appropriate thing, I
> believe, is for you to read it out loud and to publish it to them.
> The deposition is not actually going to be entered into evidence
> to be read in its entirety by the jury.
>    Ladies and Gentlemen of the jury, a portion of the
> deposition is going to be published for the purpose of
> impeachment testimony of a witness.  It's not offered to prove
> which statement is true, but it's offered for the purpose of the
> State's claim to demonstrate that on two different times, two
> different statements were made.
>    Mr. Williams, you may publish that portion of the
> deposition.
>    MR. WILLIAMS [prosecutor]:  Yes sir.  Question:  But at
> this point when both cars are traveling on the road, you don't
> see any weapons on his side?  Answer:  I ain't seen no
> weapon.

Ex. A.III at 224.  Defense counsel did not object to the fact that Dubose

was not recalled to the witness stand to explain the prior deposition

answer, nor did he object on the grounds that the question was taken out of

context or was ambiguous.  The State then rested its rebuttal case.

>    This claim was raised in Petitioner's amended Rule 3.850 motion in

state court and was denied.  Ex. 47, 76.  In the state court, Petitioner

contended that the deposition question and answer published to the jury

was taken out of context and erroneously led the jury to believe Dubose

had answered that he did not see the victim with a weapon "when Dubose

actually thought they were talking about the Defendant's "side" because

"the only person's side Dubose could see while riding in a car was

Defendant's."  Ex. F at 48.  Petitioner argued that reading just the question

and answer to the jury denied Petitioner his right of confrontation of

Dubose, and that the prosecutor improperly used the deposition testimony

as substantive evidence that Dubose lied.  *Id*.  The post-conviction court

denied the claim, stating that "Defense counsel was not ineffective for

failing to object to introduction of the deposition testimony."  Ex. F at 78

(citing Pugh v. State, 637 So. 2d 313, 314 (Fla. 3d DCA 1994)).  The state

appellate court affirmed without discussion.  Ex. I.

Section 90.608(1), Florida Statutes, provides:

> Any party, including the party calling the witness, may attack the credibility of a witness by:
>
> (1) Introducing statements of the witness which are inconsistent with the witness's present testimony.

§ 90.608(1), Fla. Stat. (2012).  In addition, section 90.614, Florida Statutes,

states in pertinent part:

> (1)  When a witness is examined concerning the witness's prior written statement or concerning an oral statement that has been reduced to writing, the court, on motion of the adverse

party, shall order the statement to be shown to the witness or its contents disclosed to him or her.

(2)  Extrinsic evidence of a prior inconsistent statement by a witness is inadmissible unless the witness is first afforded an opportunity to explain or deny the prior statement and the opposing party is afforded an opportunity to interrogate the witness on it, or the interests of justice otherwise require.  If a witness denies making or does not distinctly admit making the prior inconsistent statement, extrinsic evidence of such statement is admissible. . . .

§ 90.614, Fla. Stat. (2012).

Under Florida law, the identification of the time, place, and entity taking the prior statement, of which the witness claims no recollection, has been held to be a sufficient predicate under section 90.614 for admission into evidence of the prior statement.  *See* MBL Life Assur. Corp. v. Suarez, 768 So. 2d 1129, 1135 (Fla. 3d DCA 2000).  In Fleming v. State, 457 So. 2d 499 (Fla. 2d DCA 1984), cross-examination of the witness, and the witness's inability to recall a statement made to an investigator, "laid the necessary foundation for the subsequent introduction of extrinsic evidence establishing the statement."  *Id.* at 502.

The prosecutor in the present case, during cross-examination, referred Dubose to his earlier deposition at which the prosecutor and defense counsel were present, and at which Dubose was asked similar questions about what he witnessed on the day of the incident.  Ex. A.II at

168.  The prosecutor showed Dubose the transcript of that deposition, and specified the question and answer at issue, which Dubose was asked to review.  Thus, the witness was given an opportunity to explain or clarify his understanding of the question and his answer at the time.  Instead, Dubose testified that although he remembered the question, he did not remember giving that answer.  He offered no further explanation.  The transcript of the question and answer were later admitted into evidence.

Respondent again asserts that the claim is procedurally defaulted.  Regardless of any default, the claim should be denied on the merits.  The admission into evidence of the portion of the deposition transcript at issue was proper under Florida law.  Thus, Petitioner has failed to demonstrate that the state court unreasonably denied the claim.  Even if trial counsel should have objected on the basis that the single question and answer was ambiguous or misleading, Petitioner has failed to demonstrate a reasonable probability that Dubose's clarification of his answer would have brought about a different result at trial.  The victim testified that he did not brandish a gun while driving the car.  He testified he was talking on his cell phone and driving all during the incident on the highway.  Even if Dubose had testified in his prior deposition that he saw Medlock brandish a pistol or had explained his alleged confusion over the question, the credibility of the

witnesses would have been for the jury to determine.  Dubose's trial

testimony concerning whether Medlock had a weapon was very uncertain.

He alternately testified that Medlock "looked like he had some kind of

weapon on him, but I couldn't really see it because I was on the passenger

side" and that "[i]t looked like he had a gun pulling it out" even though

Medlock's "hands was like on the steering wheel, but he looked like he was

coming from under the seat with something black.  That's the only thing I

could see."  *Id.* at 163-64.  The jury apparently believed Medlock's

testimony that he did not show a weapon and disbelieved Petitioner and

Dubose.  Supporting or clarifying testimony from Dubose, who was

Petitioner's nephew, concerning what he saw and why he answered as he

did in the deposition would not have provided a reasonable probability of an

acquittal.

For these reasons, habeas relief on Ground 4 should be denied.

## Ground 5: Trial Counsel's Failure to Develop and Present Facts

In this ground, Petitioner argues that trial counsel rendered ineffective

assistance by failing to develop facts to support the defense theory when

the facts were readily available and discernible from the photographs

introduced by the State.  ECF No. 1 at 13.  He argues that a photograph of

Medlock showed a handgun visible on his right side under his shirt, not his

left side as Medlock testified, and that Medlock had injuries on the side of his leg, and not the back, suggesting he was turning and not running away. ECF No. 1 at 14.  Petitioner contends that counsel knew or should have known that these photographs supported the defense theory of the case and counsel could have impeached Medlock's testimony in which he said his gun was on the left side under his shirt and that he was running away when hit with bird shot from Petitioner's shotgun.  *Id.*

The claim was raised in Petitioner's amended Rule 3.850 motion in state court, Ex. F at 50, but was denied by the post-conviction court based on failure to show deficiency under the requirements of <u>Strickland</u>.  Ex. F at 69, 77-78.  The state appellate court affirmed denial of post-conviction relief.  Ex. I.  Respondent contends that this claim was unexhausted for failure to raise it in the state court as a federal claim.  Regardless of any procedural default, the claim should be denied on the merits.

Medlock testified at trial that he had a handgun on his left side under his shirt but never showed it to Petitioner and never attempted to retrieve it from under his shirt.  He described running away from Petitioner, almost being hit by a truck as he ran across the road, and trying to find cover behind some bushes while Petitioner was shooting at him.  Whether the injuries were primarily on the back of his legs or on the side of his legs

does not prove that Medlock lied about not turning to try to fire his gun at Petitioner.  Further, whether the gun was on Medlock's left side or right side would not completely impeach his testimony that he did not attempt to retrieve it or threaten Petitioner with it.  Numerous witnesses testified to Petitioner's actions during the incident, and a store surveillance video of the incident was played for the jury.

Even if trial counsel should have attempted to question Medlock based on the photographs, Petitioner failed to demonstrate that, but for the alleged error, there is a reasonable probability of a different result at trial— that is, one sufficient to undermine the court's confidence in the outcome. The post-conviction court found that although Medlock testified he had a handgun on his left side under his shirt, Petitioner testified he never saw a gun while at the store.  The court also noted that Petitioner did not specify in his testimony which hand Medlock used when Petitioner claimed he appeared to be reaching under his shirt while running away.  *Id.* at 77. This finding is supported by the record.  The state court concluded that trial counsel had not been shown to be deficient in failing to bring out these points based on the photographs.  This adjudication and the affirmance by the state appellate court have not been shown to be contrary to, or an unreasonable application of, <u>Strickland</u> or any other federal law as

determined by the Supreme Court.  Nor have the adjudications been shown

to be an unreasonable determination in light of the state court record.

Habeas relief on Ground 5 should therefore be denied.

## Ground 9: Cumulative Error

Petitioner contends in his final claim that the cumulative effect of

counsel's errors, as alleged in the state courts and in this proceeding, when

considered together rise to the level of ineffective assistance of counsel,

and that but for the cumulative effect of the alleged errors he would not

have been convicted.  ECF No. 1 at 21.  He raised this claim in his

amended Rule 3.850 motion and it was denied by the post-conviction court

and affirmed on appeal.  Ex. F at 67, 82; Ex. I.  Petitioner is not entitled to

federal habeas relief on this claim.

Although the Supreme Court has not directly addressed the

cumulative error doctrine in the context of an ineffective assistance of

counsel claim, it has been held that "there is generally no basis for finding a

Sixth Amendment violation unless the accused can show how specific

errors of counsel undermined the reliability of the finding of guilt."  Forrest

v. Fla. Dep't of Corr., 342 F. App'x 560, 564-65 (11th Cir. 2009)

(unpublished) (quoting United States v. Cronic, 466 U.S. 648, 659 n.26

(1984)).  Even if a claim of cumulative error is cognizable in federal habeas,

the Eleventh Circuit has made clear that where there is no merit in any of the claims of ineffective assistance of counsel, there is "nothing to accumulate."  *See* <u>Morris v. Sec'y, Dep't of Corr.</u>, 677 F.3d 1117, 1132 (11th Cir. 2012); <u>Finch v. Sec'y, Dept. of Corr.</u>, 643 F. App'x 848, 853 (11th Cir. 2016) (unpublished).  Because each of the claims of ineffective assistance of counsel fail, the cumulative error claim must fail.  This follows the longstanding principle that, generally, "[w]ithout harmful errors, there can be no cumulative effect compelling reversal."  <u>United States v. Barshov</u>, 733 F.2d 842, 852 (11th Cir. 1984).  For the foregoing reasons, this cumulative error claim should be denied.

## Conclusion

Based on the foregoing, Petitioner Willie Floyd is not entitled to federal habeas relief.  Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C.

§ 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## **Recommendation**

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1). It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on July 7, 2017.

<u>s/ Charles A. Stampelos</u>
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**